UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
LG CAPITAL FUNDING, LLC,

                        Plaintiff,                           REPORT AND
                                                  RECOMMENDATION

     -against-

                                                 19 CV 907 (NG)(RML)

SOLAR ENERGY INITIATIVES, INC.,

                        Defendant.
-----------------------------------------------------X
LEVY, United States Magistrate Judge:

        By order dated July 18, 2019, the Honorable Nina Gershon, United States District

Judge, referred plaintiff's motion for a default judgment to me for a report and recommendation

as to whether entry of a default judgment is appropriate and, if so, as to the scope of relief,

including damages, interest, costs, and attorney's fees, if any, to be awarded to plaintiff.  For the

reasons stated below, I respectfully recommend that plaintiff's motion be granted and that

plaintiff be awarded $111,500 in unpaid principal, plus $3,709.59 in regular interest, $3,319.50

in attorney's fees, $705 in costs, and default interest at a combined rate of $69.44 per day from

October 29, 2013 through entry of final judgment.

## BACKGROUND

        Plaintiff LG Capital Funding, LLC ("plaintiff" or "LG"), a New York limited

liability company,[1] commenced this diversity action on February 14, 2019, asserting state law

claims against defendant Solar Energy Initiatives, Inc. ("defendant" or "SNRY"), a Delaware

corporation with its principal place of business in Canada, for breach of contract and unjust

enrichment related to two convertible promissory notes (the "Notes") issued by SNRY to LG.

---

[1]  All members of LG are citizens of New York.  (Complaint, dated Feb. 14, 2019, Dkt. No. 1,
¶ 1.)

(See Complaint, dated Feb. 14, 2019 ("Compl."), Dkt. No. 1.)  Plaintiff also seeks attorney's fees and costs under the terms of the Notes.  (Id. ¶¶ 51-52.)

According to the complaint and attached documents, on or about April 18, 2013, LG and SNRY entered into a Securities Purchase Agreement (the "SPA"), which provided for the purchase and issuance of an eight percent convertible note in the aggregate principal amount of $51,500.  (See Securities Purchase Agreement, annexed to Compl. as Ex. A.)  Pursuant to the terms of the SPA, SNRY issued to LG a $51,500 eight percent Convertible Redeemable Note with a maturity date of January 18, 2014 ("Note 1").  (See Note 1, annexed to Compl. as Ex. B.) On the same day, April 18, 2013, SNRY sent LG a disbursement memorandum in connection with funding Note 1; SNRY instructed LG to disburse $1,500 to DART Business Services, LLC and $50,000 to SNRY.  (Compl. ¶ 8; Disbursement Memorandum, annexed to Compl. as Ex. C.) On April 22, 2013, LG funded Note 1 pursuant to the disbursement memorandum.  (Compl. ¶ 9; Wire Confirmation, annexed to Compl. as Ex. D.)

On or about July 1, 2013, LG and SNRY entered into an Assignment Agreement, which provided for, *inter alia*, the assignment of a Restated Promissory Note in the principal amount of $60,000, which restated a portion of an original promissory note in the amount of $160,000 that was owned by the Marovic Family Trust.  (Compl. ¶ 10; Assignment Agreement, annexed to Compl. as Ex. E.)  Pursuant to the terms of the Assignment Agreement, on July 1, 2013, SNRY issued to LG a replacement $60,000 eight percent Convertible Redeemable Note with a maturity date of April 1, 2014 ("Note 2").  (Compl. ¶ 11; Note 2, annexed to Compl. as Ex. F.)  On the same day, July 1, 2013, the Marovic Family Trust directed LG to wire the purchase price via a disbursement memorandum; the Marovic Family Trust instructed LG to disburse $60,000 to Fasel & Fasel LLP IOLTA, the attorneys for the Marovic Family Trust.

(Compl. ¶ 12; Disbursement Memorandum, annexed to Compl. as Ex. G.)  On July 2, 2013, LG funded Note 2 pursuant to the disbursement memorandum.  (Compl. ¶ 13; Wire Confirmation, annexed to Compl. as Ex. H.)

Each Note provides that an "Event of Default" shall occur if the "Borrower shall fail to comply with the reporting requirements of the Exchange Act; and/or the Borrower shall cease to be subject to the reporting requirements of the Exchange act."  (Note 1 § 3.9; Note 2 § 2.9.)  According to the complaint, SNRY failed to file a Form 10-Q Quarterly Report on October 29, 2013, and has not filed a Form 10-Q since June 13, 2013, which reported the quarterly period ending April 30, 2013.  (Compl. ¶ 23.)  In addition, on January 8, 2014, SNRY filed a Certification and Notice of Termination of Registration Under Section 12(G) of The Securities Exchange Act of 1934 or Suspension of Duty to File Reports Under Sections 13 And 15(D) of the Securities Exchange Act of 1934.  (Id.)  Thus, SNRY's failure to keep current in its filings with the SEC caused an Event of Default on October 29, 2013, and another on January 8, 2014.  (Id.)

Further, each Note provides that an Event of Default shall occur if the "Borrower fails to pay the principal hereof or interest thereon when due on this Note . . . at maturity."  (Note 1 § 3.1; Note 2 § 2.1.)  On January 18, 2014, Note 1 reached maturity and became due and payable, requiring SNRY to remit payment of the outstanding principal balance and accrued interest on Note 1.  However, SNRY did not remit payment to LG.  (Compl. ¶¶ 25, 26.)  By failing to pay LG the outstanding principal and interest on Note 1 on January 18, 2014, SNRY caused an Event of Default under Article III of Note 1.  (Note 1 § 3.1.)  In addition, on April 1, 2014, Note 2 reached maturity and became due and payable, but SNRY did not remit to LG payment of the outstanding principal balance and accrued interest on Note 2.   (Compl. ¶ 28.)

Thus, SNRY caused an Event of Default under Article II of Note 2 by failing to pay LG the outstanding principal and interest due on January 18, 2014. (Note 2 § 2.1).

On April 25, 2016, LG sent SNRY a demand letter, stating that SNRY caused Events of Default under the Notes and demanding that it immediately tender payment of the remaining principal and accrued interest. (Compl. ¶ 33.) To date, SNRY has not done so. (Id. ¶ 34.) Plaintiff seeks damages of $111,500 in outstanding principal, plus regular and default interest under the terms of the Notes. (Id. ¶ 38 & Figure 1.) Plaintiff also requests attorney's fees and costs. (Id. ¶¶ 51-52.)

### DISCUSSION

### A. Default Judgment

The Federal Rules of Civil Procedure prescribe a two-step process for a plaintiff to obtain a default judgment. First, when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). Second, after a default has been entered against a defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the court may, on a plaintiff's motion, enter a default judgment. FED. R. CIV. P. 55(b)(2).

Plaintiff effected proper service on defendant by serving its registered agent via the Delaware Secretary of State.[2] (See Affidavit of Service of Granville Morris, sworn to Mar.

---

[2] Pursuant to Rule 4(h) of the Federal Rules of Civil Procedure, corporate defendants may be served "pursuant to state law in the state . . . where service is made[.]" Jean-Louis v. Warfield, 898 F. Supp. 2d 570, 574 (E.D.N.Y. 2012) (citing FED. R. CIV. P. 4(h)(1)(A)). Under Delaware law, service of process on a corporation

> shall be made by delivering a copy personally to any officer or
> director of the corporation in this State, or the registered agent

(Continued….)

4

1, 2019, Dkt. No. 6.)  The Clerk of the Court entered defendant's default on June 25, 2019.  (See

Clerk's Entry of Default, dated June 25, 2019, Dkt. No. 8.)  To date, defendant has not answered

or moved with respect to the complaint.

   A default is an "admission of all well-pleaded allegations against the defaulting

party."  Vt. Teddy Bear Co. v. 1–800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004).  To state

a claim for breach of contract under New York law,[3] a plaintiff must allege: (1) the existence of a

contract; (2) the performance of that contract by one party; (3) the breach of that contract by the

other party; and (4) damages.  Lenard v. Design Studio, 889 F. Supp. 2d 518, 528 (S.D.N.Y.

2012).  "Mutual assent is evidenced by the parties' signatures on a written agreement."  Sery v.

Medina, No. 13 CV 165, 2015 WL 9450844, at *6 (S.D.N.Y. Dec. 23, 2015) (citing State Bank

of India v. Star Diamonds, 901 F. Supp. 177, 179 (S.D.N.Y. 1995) ("Under New York law, a

party is legally bound by his or her signature to a contract.")).

   Plaintiff has adequately pleaded each element of a breach of contract claim.  By

virtue of the allegations in the complaint and the two attached Notes, LG has established the

existence of two contracts between the parties.  It has also sufficiently alleged that it has been

damaged by defendant's failure to perform its obligations under the agreement, in that it funded

the Notes with the expectation that it would receive payment upon the maturity date of each

---

     of the corporation in this State, or by leaving it at the dwelling
     house or usual place of abode in this State of any officer,
     director or registered agent (if the registered agent be an
     individual), or at the registered office or other place of business
     of the corporation in this State.

8 Del. C. § 321(a).

[3]  Both Notes expressly provide that they are governed by New York law.  (See Note 1 § 4.6;
Note 2 § 3.6.)

Note.  (Compl. ¶¶ 41-44.)  Because plaintiff's allegations, taken as true, are sufficient to establish liability, I recommend that the motion for a default judgment be granted.[4]

### B.  Damages

"While a party's default is considered a concession of all well-pleaded allegations of liability, it is not considered an admission of damages."  Soundkillers, LLC v. Young Money Entm't, LLC, No. 14 CV 7980, 2015 WL 711723, at *2 (S.D.N.Y. Feb. 19, 2015); see also Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012).  In considering a motion for default judgment, a court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). While a court may hold a hearing to assess the proper amount of damages, no hearing is required when there is a sufficient basis in the record on which to make a calculation.  See FED. R. CIV. P. 55(b)(2) (providing that a court "*may* conduct hearings . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages" (emphasis added)).  Here, plaintiff's sworn declarations and exhibits provide a sufficient basis to calculate damages with reasonable certainty.

"Under New York law, damages for breach of contract should put the plaintiff in the same economic position [it] would have occupied had the breaching party performed the contract."  Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 196 (2d Cir. 2003).  "New York courts are clear that breach of contract damages are measured from the date of the breach."  Id. Here, the breach in question was SNRY's failure to pay the principal and accrued interest owed

---

[4] I recommend that plaintiff's claim for unjust enrichment be dismissed as duplicative of its breach of contract claim.  See LG Capital Funding, LLC v. Wowio, Inc., No. 16 CV 6632, 2018 WL 2224991, at *1 (E.D.N.Y. May 15, 2018).

to plaintiff at the dates of maturity.  Had defendant performed under the contracts, plaintiff

would be entitled to $111,500 in outstanding principal.  (See Declaration of Joseph Lerman,

dated June 25, 2019 ("Lerman Decl."), Dkt. No. 9-1, ¶ 6.)  I therefore recommend that plaintiff

be awarded $111,500 in principal under the Notes.  In addition, both Notes provide for an eight

percent regular interest rate.  Plaintiff has accurately calculated regular interest on the Notes as

totaling $3,709.59.[5]

### C.  Default Interest

Both Notes provide that "[a]ny amount of principal or interest on this Note which

is not paid when due shall bear interest at the rate of twenty-two percent (22%) per annum from

the due date thereof until the same is paid."  (Note 1 at 1; Note 2 at 1.)  This default interest

provision is enforceable.  See Emigrant Funding Corp. v. 7021 LLC, 901 N.Y.S.2d 906, 906

(N.Y. Sup. Ct. 2010) (citations omitted) ("Parties are free to agree that a contract rate of interest

shall increase upon default, so long as an interest rate is not usurious or does not constitute a

penalty."); see also LG Capital Funding, LLC v. One World Holding, Inc., No. 15 CV 698, 2018

WL 3135848, at *11-13 (E.D.N.Y. June 27, 2018) (noting that the New York usury cap is

twenty-five percent).  Indeed, numerous courts in this district have enforced similar default

interest provisions.  See, e.g., LG Capital Funding, LLC v. MineralRite Corp., No. 16 CV 6158,

2017 WL 9250297, at *12 (E.D.N.Y. Dec. 1, 2017); LG Capital Funding, LLC v. FLASR, Inc.,

---

[5]  This figure was reached as follows:
     Note 1: 8% [interest rate due on Principal] x $51,500 [Principal]  = $4,120 [interest per year] / 365 days [days in a year] = $11.28 [interest per day] x 190 [days between Funding Date and Maturity Date] = $2,144.66 [interest due and owing on Note 1].
     Note 2: 8% [interest rate due on Principal] x $60,000 [Principal] = $4,800 [interest per year] / 365 days [days in a year] = $13.15 [interest per day] x 119 [days between Funding Date and Maturity Date] = $1,564.93 [interest due and owing on Note 2].
     $2,144.66 + $1,564.93 = $3,709.59.

No. 16 CV 3565, 2017 WL 5068116, at \*4 (E.D.N.Y. July 27, 2017), report and recommendation adopted as modified, 2018 WL 6804480 (E.D.N.Y. Dec. 27, 2018); LG Capital Funding, LLC v. Coroware, Inc., No. 16 CV 2266, 2017 WL 9250379, at \*5 (E.D.N.Y. July 12, 2017), report and recommendation adopted, 2017 WL 3973921 (E.D.N.Y. Sept. 8, 2017); LG Capital Funding, LLC v. M Line Holdings, Inc., No. 16 CV 6012, 2017 WL 9250296, at \*8 (E.D.N.Y. June 1, 2017), report and recommendation adopted, 2018 WL 3599731 (E.D.N.Y. July 27, 2018).  I therefore recommend that plaintiff be awarded interest at the default rate of twenty-two percent per annum from the "default date" of October 29, 2013 until judgment is entered.[6]  (See Lerman Decl. ¶ 6 & Figure 1.)  Plaintiff accurately calculates the daily default interest as $32.33 on Note 1 and $37.11 on Note 2 (id. ¶ 7), for a combined rate of $69.44 per day.

### D.  Reasonable Attorney's Fees

Plaintiff also requests an award of reasonable attorney's fees and costs.  (See id. ¶ 9.)  "Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action on the contract is enforceable 'if the contractual language is sufficiently clear.'"  Cnty. of Oswego Indus. Dev. Agency v. Fulton Cogeneration Assocs., LP, 636 F. Supp. 2d 159, 179 (N.D.N.Y. 2009) (citing NetJets Aviation, Inc. v. LHC Commc'ns,

---

[6]  Although the Notes call for prejudgment interest at the rate of twenty-two percent until the amount due is paid, once judgment is entered, interest will accrue at the statutory post-judgment interest rate.  See Westinghouse Credit Corp. v. D'Urso, 371 F.3d 96, 102 (2d Cir. 2004) ("The general rule under New York and federal law is that a debt created by contract merges with a judgment entered on that contract, so that the contract debt is extinguished and only the judgment debt survives).  "Under New York law, contract language stating that a particular interest rate will accrue on a debt until the date of payment is interpreted as applying to the debt itself, and not to any judgment into which the debt is merged."  Id. (citing Marine Mgmt., Inc. v. Seco Mgmt., Inc., 574 N.Y.S.2d 207, 208 (2d Dep't 1991), aff'd, 600 N.E.2d 627 (N.Y. 1992)).  Accordingly, the post-judgment interest rate is the one enumerated in 28 U.S.C. § 1961 and not the default rate contained in the Notes.

LLC, 537 F.3d 168, 175 (2d Cir. 2008)).  Here, each of the Notes provides that "[i]f default is made in the payment of this Note, the Borrower shall pay the Holder hereof costs of collection, including reasonable attorneys' fees."  (Note 1 § 4.5; Note 2 § 3.5).  This provision evidences the parties' clear intent to provide for attorney's fees in the event of a breach.  In fact, LG has been awarded attorney's fees in this district in other default judgment proceedings based on substantially similar contractual provisions.  See, e.g., LG Capital Funding, LLC v. MineralRite Corp., 2017 WL 9250297, at *14; LG Capital Funding, LLC v. Volt Solar Sys., Inc., No. 15 CV 1404, 2016 WL 11447845, at *9 (E.D.N.Y. Aug. 15, 2016), report and recommendation adopted, 2016 WL 4718014 (E.D.N.Y. Sept. 9, 2016); LG Funding, LLC v. Fla. Tilt, Inc., No. 15 CV 631, 2015 WL 4390453, at *4 (E.D.N.Y. July 15, 2015).

        The standard method for determining reasonable attorney's fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," arriving at a "presumptively reasonable fee."  Francois v. Mazer, 523 F. App'x 28, 29 (2d Cir. 2013) (citing Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 188–90 (2d Cir. 2008)); Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058–59 (2d Cir. 1989); Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  A party seeking attorney's fees "must support that request with contemporaneous time records that show 'for each attorney, the date, the hours expended, and the nature of the work done."  First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc., No. 10 CV 696, 2013 WL 950573, at *8 (E.D.N.Y. Mar. 12, 2013) (quoting N.Y.S. Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983)); see also Scott v. City of N.Y., 643 F.3d 56, 58-59 (2d Cir. 2011).

        In support of its claim for attorney's fees, LG has submitted a declaration from its counsel, Kevin Kehrli, Esq., and attorney time records listing work performed by the law firm

Garson, Segal, Steinmetz, Fladgate LLP ("Garson Segal").  (See Declaration of Kevin Kehrli, Esq., dated June 25, 2019 ("Kehrli Decl."), Dkt. No. 9-2; Attorney Time Records ("Time Records"), Dkt. No. 9-6.)  LG seeks $4,875 in attorney's fees for work performed by two associates with Garson Segal, Mr. Kehrli and Rushelle Bailey, at an hourly rate of $250 for 19.5 hours of work on this case.  (Kehrli Decl. ¶¶ 20-22.)  According to his declaration, Mr. Kehrli has been licensed to practice since 2015, and started work with Garson Segal upon graduating from Brooklyn Law School in 2014.  (See id. ¶ 21, n.1.)  Ms. Bailey graduated from Benjamin N. Cardozo School of Law in 2017 and was admitted in 2018.  Id.

A reasonable hourly rate is "the rate a paying client would be willing to pay," "bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190.  The reasonable hourly rates should be based on "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation."  Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1159 (2d Cir. 1994) (citing Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984). The "community" is generally considered the district where the district court sits.  See Arbor Hill, 522 F.3d at 190.  Determination of the prevailing market rates may be based on evidence presented or a judge's own knowledge of hourly rates charged in the community. Chambless, 885 F.2d at 1059; see also Farbotko v. Clinton Cty., 433 F.3d 204, 209 (2d Cir. 2005).

Plaintiff requests an hourly rate of $250 for each of the attorneys who billed in this matter.  (Kehrli Decl. ¶ 20.)  "Courts have found that the prevailing hourly rates in this district are generally between $300 and $400 for law firm partners, $200 to $300 for senior associates, and $100 to $200 for junior associates."  LG Capital Funding, LLC v. 5Barz Int'l,

Inc., No. 16 CV 2752, 2019 WL 3082478, at *2 (E.D.N.Y. July 15, 2019) (citing cases). The

blanket rate of $250 per hour requested by plaintiff's counsel does not account for the disparate

experience of the two attorneys who billed on this matter.  That is, this rate treats Mr. Kehrli, in

his fifth year of practice and arguably a mid-level associate, the same as Ms. Bailey, who was

admitted to practice in 2018.  (Kehrli Decl. ¶ 21 n.1.)  I therefore recommend that Mr. Kehrli's

hours be compensated at the hourly rate of $250, but that Ms. Bailey's hourly rate be reduced to

$150.  See 5Barz Int'l, 2019 WL 3082478, at *3 ("the court finds that a rate at the midpoint for

the range of rates typically awarded for a junior associate, or $150, would be reasonable for most

of the hours billed in this case by the junior associates admitted to practice."); FLASR, Inc., 2018

WL 6804480, at *5 (reducing hourly rate for four associates' work to $150).

   Additionally, plaintiff's counsel billed time for a number of tasks best described

as clerical and typically completed by paralegals.  For example, Ms. Bailey spent .9 hours

"Requesting Service of Process," .2 hours "Corresponding with process server and requesting

service on Sec'y of State," .6 hours on "Phone calls to reach the clerk's office re request for cert

of default," and one hour to "Appear at EDNY Clerk's office to request cert of default." (See

Time Records.)  Attorneys are generally compensated for clerical work at the hourly rate for

clerks and paralegals.  See Rozell v. Ross-Hoist, 576 F. Supp. 2d 527, 541 (S.D.N.Y. 2008)

(finding attorneys engaged in clerical tasks should be compensated as clerical employees); see

also G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist., 894 F. Supp. 2d 415, 439 (S.D.N.Y.

2012) ("A court has the discretion to reduce the award for time spent by attorneys engaging in

'less skilled work, like filing and other administrative tasks.'"); Tucker v. City of New York, 704

F. Supp. 2d 347, 356 (S.D.N.Y. 2010) (reducing fee award where attorney billed at full rate for

clerical tasks such as serving process, copying, and filing papers).  I recommend applying the paralegal rate of $85 per hour to this work.  See 5Barz Int'l, 2019 WL 3082478, at *3.

The court must next address whether the number of hours expended by plaintiff's counsel was reasonable in this breach of contract case.  Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992) ("The relevant issue . . . is . . . whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.").  Plaintiff's submission shows that Mr. Kehrli spent 5.7 hours and Ms. Bailey spent 13.8 hours working on this matter. (Time Records.)

In reviewing a fee application, the court must examine the particular hours expended by counsel with a view to the value of the work product to the client's case.  See Lunday v. City of Albany, 42 F.3d 131, 133 (2d Cir. 1994); DiFilippo v. Morizio, 759 F.2d 231, 235 (2d Cir. 1985).  If any expenditure of time was "excessive, redundant, or otherwise unnecessary," the court should exclude these hours from the calculation.  See Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999); Lunday, 42 F.3d at 133; Hensley, 461 U.S. at 434.

This action involved a straightforward, relatively uncomplicated suit related to damages for breach of two Notes involving a single plaintiff and defendant, resulting in a default judgment.  I find that plaintiff's counsel expended a reasonable number of hours in prosecuting plaintiff's claims.  I therefore recommend that counsel's hours not be reduced.  Applying these rates to the reasonably expended hours, as discussed above, yields a reasonable fee award of $3,319.50 ($250 x 5.7 + $150 x 11.1  +  $85 x 2.7).

**E. Costs**

In addition to attorney's fees, courts typically award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged [to] fee-paying clients." Reichman v. Bonsignore, Brignati & Mazzotta, P.C., 818 F.2d 278, 283 (2d Cir. 1987); see also LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998); FED. R. CIV. P. 54(d)(1). "The fee applicant bears the burden of adequately documenting and itemizing the costs requested." Pennacchio v. Powers, No. 05 CV 985, 2011 WL 2945825, at *2 (E.D.N.Y. July 21, 2011).

Plaintiff seeks $705 in costs, which includes $400 for the filing fee and $305 for service of process. (See Kehrli Decl. ¶ 23; Invoices, Dkt. No. 9-7.) The cost of the case filing and process server fees are reasonable and justified. See MineralRite Corp., No. 2017 WL 9250297, at *16. Therefore, I respectfully recommend that plaintiff be awarded $705 in costs.

**CONCLUSION**

For the foregoing reasons, I respectfully recommend that plaintiff's motion be granted, and that plaintiff be awarded (1) $111,500 in unpaid principal; (2) $3,709.59 in regular interest; (2) default interest at a combined rate of $69.44 per day from October 29, 2013 through entry of final judgment; (3) $3,319.50 in attorney's fees; and (4) $705 in costs.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Gershon and to my chambers, within fourteen (14) days.  Failure to file objections in a timely manner may waive a right to appeal the District Court's order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72.

Respectfully submitted,

_____/s/_____
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
        November 1, 2019